## ASSIGNED ESTATE OF BEULAH L. LARKIN.

APPEAL BY S. R. SHIPLEY FROM THE COURT OF COMMON PLEAS OF DELAWARE COUNTY.

Argued February 12, 1890—Decided February 24, 1890.

1. Where an assignor for the benefit of creditors reserves in the deed of assignment " such property as is now by law exempt from levy and sale on execution," such reservation is sufficient notice of the claim for ex-

Auditor's Report.

emption, both to the assignee and to all claimants upon the assigned estate.

2. And where, in such case, the assignor's personalty, appraised at $97.75, is retained by him, it is the duty of the assignee, upon the sale of the realty, consisting of a single tract, to pay the balance of the exemption claim out of the proceeds, and no specific appraisement of the land is necessary.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 220 January Term 1890, Sup. Ct.; court below, number and term not given.

On December 12, 1887, Beulah L. Larkin executed and delivered to William Ward, a deed of voluntary assignment for the benefit of creditors of all her estate, real and personal, the real estate consisting of a farm in Bethel township. The deed contained a reservation as follows: "Reserving thereout such property as is now by law exempt from levy and sale on execution."

The personal estate, appraised by the general inventory at $97.75, was retained by the assignor. Subsequently the real estate was sold by order of the court, realizing for distribution the sum of $2,030, and *Mr. O. B. Dickinson* was appointed auditor, before whom the assignor appeared and asked to be awarded the sum of $202.25, the balance of her $300 exemption.

After hearing the parties, the auditor reported, in part as follows:

The assignor, at the time of the assignment, was possessed of some personal property. The assigned estate consisted, however, in the main of real estate. Out of the operation of the assignment she excepted, as has been stated, $300 in value of property.

The words of reservation are broad enough to cover this, and are so construed by your auditor, though a strict and narrow view might limit the expression used to the articles which by law are absolutely exempt from the levy and sale, and were so before the act of 1849.

The entire personal estate of the assignor consisted of a few articles of domestic use. These, together with the real estate,

Auditor's Report.

were appraised and included in the inventory filed. The assignment was made December 12, 1887, and the trust accepted by the assignee on the twenty-third of the same month. The appraisers were appointed January 9, 1888, and made their appraisement February 8th following. The personal property was appraised at the sum of $97.75 and the real estate at $11,500. The real estate was a farm in Bethel township, incapable of any such division as would have enabled the appraisers or assignee to set aside any real estate to the assignor under her exemption. The assignor resided upon the premises and remained there until dispossessed by the purchaser. There was also a tenant. He vacated the place shortly after the assignment, and about the time the appraisment was held. There was no rent in arrear, and the tenant returned and removed the way going crops. The personal property was retained by the assignor under her reservation in the deed.

These are all the facts submitted to your auditor, and from this unsatisfactory statement your auditor and the court are asked to shoulder the burden of discovering or imagining what was actually done. Neither the assignor nor the appraisers were called, and we are asked to infer from shadowy circumstances whether the assignor made any claim to her exemption, and when she made it, though these are facts susceptible of clear proof.

It is settled that the assignor must make good the reservation in the deed, by following it up with a demand for the reserved property and having its value determined. If this is done, the right of the assignor to the excepted property is complete. If it is not done, the right is deemed to have been lost or abandoned through the laches of the assignor. It seems to have been further decided that the making of the general appraisement by the appointees of the court is the time when the rights of the assignors must be asserted: Shaeffer's App., 101 Pa. 48; Chilcoat's App., 101 Pa. 22.

Did the assignor make her claim at the time of the appraisement in this case? Your auditor has endeavored to find some evidence or circumstances in the case, which should justify him in finding that she did. He has not, however, been able to do so, and is under the evidence obliged to find that she did not, and that her laches in the assertion of her rights have

been such as to justify and even compel the inference, that the
right to the remainder of her exemption had been waived or
abandoned.

The practice in such cases has been, so far as your auditor
is informed, for the appraisers to be affirmed to appraise both
the reserved property and the estate for which the assignee
becomes responsible. Both appraisements are then returned
to court and filed. Sometimes, as a matter of precaution,
there is a petition presented and notice given, following the
mode prescribed by the act of May 4, 1864, P. L. 762, where
there is no reservation. In this case, neither demand nor ap-
praisement of any kind was made. The assigned estate, both
real and personal, was appraised and returned to the court in
one inventory. The assignor seems to have made no claim,
even to the personalty, but the assignee never took possession
of this, but permitted it to remain in the possession of the as-
signor.

The rest of the assigned estate consisted of real estate.
This was by order of court sold by the assignee. There were
judgment creditors who attended the sale to protect their in-
terests. They would have been justified in acting, and prob-
ably did act upon the state of facts as they then existed. To
permit the assignor to now make a claim to the balance of her
$300, would be to punish the creditors for her laches. The
claim of Beulah L. Larkin is, therefore, rejected.

Exceptions filed by the assignor to the foregoing report were
overruled by the auditor, and renewed in court on the filing of
the report. After argument, the court, CLAYTON, P. J., filed
the following opinion:

The chief question in this case is as to the assignor's right
to the full benefit of her exemption, reserved in her deed of
assignment for the benefit of her creditors. The right to re-
tain $300 worth of property is clearly reserved in the deed of
assignment. The only question is, has she lost it by failing to
follow up her right? The auditor very properly states the
case as depending mainly upon the proper construction of the
effect to be given to the acts of the claimant and the assignee,
and throws upon the claimant the burden of proving that she
was not negligent in asserting her right. In this I am not
sure that he is right.

Opinion of Court below.

Her claim rests upon a clearly expressed reservation in the deed under which her creditors claim. One may lose his rights by virtue of the statute of limitations, but the presumption is always in his favor, and the defendant must invariably plead the statute, otherwise he cannot set it up as a defence. So, wherever negligence is alleged as a defence, it must be proved. It seems to me that where a right exists, and is clearly expressed by deed, the claimant, under such a reservation, must be presumed to have done everything necessary to consummate her claim. The auditor decides the case against her, because she has not produced proof that she promptly claimed her exemption when the appraisement was made. It may be that she cannot prove a formal notice, but has she not proved by a material and pertinent circumstance, so conclusive that it ought even to override an oath to the contrary, that such formal notice was either given, or was waived by the assignee?

The assignee represented the creditors. Let us suppose that without any formal demand he had set apart to her, after the appraisement, her full $300 exemption, and had permitted it to remain with her ever since; would any court hold that the money could now be recovered from her, merely because she could not prove a formal notice that she required it to be set apart to her?

Aside from the first proposition, that the onus is upon the creditors to prove laches on her part, do not the acts of the assignee and the surrounding circumstances sufficiently show that she did promptly demand her right, or that the assignee waived formal notice of such a demand by voluntarily recognizing it?

From the testimony returned by the auditor, it appears that the assignee has no distinct recollection of the formalities observed under the claim for exemption. He however distinctly says that, if the question had been asked him whether she was entitled to her claim, he would unhesitatingly have said yes. The assignee is a lawyer of large experience. He knew what was necessary to be done. Is it not probable that he would have noticed an omission which would have proved fatal to his assignor's claim and beneficial to the creditors he represents? Yet he says he believed she was entitled to her exemption. As he was the person entitled to the notice, the presumption

is that he duly received it, and it would be wrong to take advantage now of what was then admitted. But the fact that he did set apart to the assignor personal property to the appraised value of $98 and has not brought it into his account, is almost conclusive evidence that it was duly claimed.

Again; we have the undisputed testimony of Mrs. Larkin that Mr. Ward, the assignor, told her on the day the deed was made, that there would not be enough personal property to pay her all her $300, and that he then said "you will get the balance." This is evidence that he had notice then that she would claim it, and he undertook to see that she got it. Then, acting under the notice, he proceeded to make his appraisement and left with her the household goods at the appraisement. The testimony then shows that on October 12, 1888, she wrote the assignee a letter, as follows: "I have waited long to hear from you as regards the money due me. You said that if the appraisement of the furniture did not amount to $300, it would be paid to me from the sale of property. Now, I would like to have it as soon as possible, as I think things are about to close now." Mr. Ward answered this letter, not denying a word of its allegation, and for the first time advised her to see her counsel. . . . .

I cannot see how any one is injured by the failure of Mrs. Larkin to follow up her claim any more completely than she has. It will not do to say that creditors would have bid more if they had known of her claim. The answer to this is, that they did know it. They were bound to look at the assignee's power to sell, and would find that the deed conferring the power reserved her right to $300. It was their duty to inquire whether she had followed up her claim, or whether she had abandoned it, which they did not do.

Having made her claim ; having received a part, and having been assured by the assignee that she would receive the balance from the sale of the real estate, for that was the only remaining property from which it could be paid, . . . . I am of opinion that the next step was to demand it as soon as she conveniently could, after the land was converted into money. This she has done and she is entitled to her money. This opinion is in accord with Peterman's App., 76 Pa. 120, as explained in Chilcoat's App., 101 Pa. 25.

The exception of Mrs. Larkin is therefore sustained, and the case is remitted to the auditor to re-state his table of distribution in accordance with the views expressed in this opinion.

—A supplemental report, in accordance with the foregoing opinion having been filed, a final decree of distribution was made, whereupon Samuel R. Shipley, a creditor, took this appeal, specifying that the court erred in sustaining the assignor's exceptions to the auditor's first report, and in the final decree of distribution entered.

*Mr. A. Lewis Smith* (with him *Mr. Lewis Lawrence Smith*), for the appellant.

Counsel cited: Chilcoat's App., 101 Pa. 22; Shaeffer's App., 101 Pa. 48; Harlan v. Haines, 125 Pa. 48.

*Mr. W. S. Sykes*, for the appellee.
Counsel cited: Peterman's App., 76 Pa. 116.

PER CURIAM:

The appellee was clearly entitled to her exemption. It was expressly reserved in the deed of assignment, and to this extent her assigned estate never passed to her assignee. The reservation was notice to the latter, and to all claimants upon the assigned estate, of her exemption. It was the duty of the assignee to have it appraised, so far as an appraisement was necessary, and set it apart to her. This was done to the extent of the personal estate. It was appraised, and she retained it. The amount of that, however, was only $97.75. There was nothing left to meet the balance of her claim but the real estate. This consisted only of a farm, which was subject to a mortgage of $6,000. The farm was sold, realizing the sum of $2,030 for distribution. It was clearly the duty of the assignee to pay the balance of appellee's claim out of this fund. He would have been personally responsible to her, if he had not. It would have been an idle ceremony, and useless expense, to have appraised this farm under her claim, and where the assignor elects to receive the amount of his exemption in money no appraisement is necessary: Peterman's App., 76 Pa. 116. Nor do we see any hardship to the purchaser, or to the lien creditors.

The reservation in this deed, as before stated, was notice to them. It was directly in the line of · the title.

> Decree affirmed, and the appeal dismissed, at the costs of the appellants.